**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 25, 2018

Delores Queen
433 Random Road
Baltimore, MD 21229

Jay Hinsley
Social Security Administration
6401 Security Boulevard Room 617
Baltimore, MD 21235

      RE:    *Delores Queen v. Commissioner, Social Security Administration*;
                Civil No. SAG-16-3528

Dear Ms. Queen and Counsel:

      On October 25, 2016, Plaintiff Delores Queen, who proceeds *pro se*, petitioned this Court to review the Social Security Administration's final decision to deny her claims. [ECF No. 1]. I have considered the Commissioner's Motion for Summary Judgment [ECF No. 21], in addition to arguments made by Ms. Queen's former attorney at her administrative hearings.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 4051(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Ms. Queen filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in April, 2011, alleging a disability onset date of December 23, 2010. (Tr. 298-308). Her claims were denied initially and on reconsideration. (Tr. 132-36, 140-43). A hearing, at which Ms. Queen was represented by counsel, was held on May 10, 2013, before an Administrative Law Judge ("ALJ"). (Suppl. Tr. 531-61). Following that hearing, the ALJ determined that Ms. Queen was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 110-25). The Appeals Council remanded the case back to the ALJ for additional inquiry. (Tr. 126-29). A second hearing was held on April 30, 2015. (Tr. 27-65), after which the ALJ again wrote an opinion denying benefits. (Tr. 10-20). This time, the

---

[1] On December 13, 2017, the Clerk's Office sent Ms. Queen a Rule 12/56 letter, advising her of the potential consequences of failing to oppose the Commissioner's dispositive motion. [ECF No. 22]. Ms. Queen did not file any response before the deadline.

Appeals Council denied Ms. Queen's request for review, (Tr. 1-3), so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Queen suffered from the severe impairments of "Status-post left humeral and Intercondylar fractures with open reduction internal fixation (ORIF) (2/26/11) and subsequent hardware removal on 11/16/11, Status-post hysterectomy, Status-post fracture of the left knee cap with ORIF, alcohol dependence and major depressive affective disorder." (Tr. 13). Despite these impairments, the ALJ determined that Ms. Queen retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could frequently push and pull with the left upper extremity and frequently operate foot controls with the left foot. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could never climb ladders, ropes or scaffolds. She could frequently reach and overhead reach with the left upper extremity. She must avoid concentrated exposure to extreme cold, excessive vibrations, hazardous moving machinery and unprotected heights. She is further limited to simple routine and repetitive tasks in a low stress work environment (no strict production quotas) and occasional interactions with the public, coworkers and supervisors.

(Tr. 15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Queen could not perform past relevant work as a warehouse worker, cook, and laborer, but could perform other jobs existing in significant numbers in the national economy. (Tr. 18-20). Accordingly, the ALJ determined that Ms. Queen was not disabled. (Tr. 20).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. The ALJ ruled in Ms. Queen's favor at step one, and determined that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13); *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Ms. Queen claimed prevented her from working. (Tr. 18-21); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ determined that Ms. Queen's myopia was non-severe, since Ms. Queen did not testify to any limitations arising from the condition. (Tr. 13). After finding that other impairments were severe, the ALJ continued with the sequential evaluation and considered, in assessing Ms. Queen's RFC, the extent to which her impairments limited her ability to work.

At step three, the ALJ determined that Ms. Queen's impairments did not meet, or medically equal, the criteria of any listings. (Tr. 14-15). Specifically, the ALJ noted that Ms. Queen's fractures of her lower extremity and upper extremity do not meet the criteria of Listings 1.06 or 1.07. (Tr. 14). In addition, because Ms. Queen alleged mental impairments, the ALJ applied the special technique for evaluation of such claims, using a five-point scale to rate a claimant's degree of limitation in the first three functional areas: none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. The ALJ determined that Ms. Queen had mild limitation in activities of daily living, moderate limitation in social functioning and concentration, persistence, or pace, and no episodes of decompensation. (Tr. 14-15). The ALJ cited to evidence from the record, specifically Ms. Queen's own testimony about her capabilities, to support those conclusions. *Id.* Therefore, the mental health listings were not met. I have carefully reviewed the record, and I agree that no listings are met in this case.

In considering Ms. Queen's RFC, the ALJ summarized her subjective complaints from her hearing testimony. (Tr. 16). The ALJ then engaged in a detailed review of Ms. Queen's mental and physical medical records. (Tr. 16-17). The ALJ noted that the record reflected improvement and no lingering restrictions following repair of her left humeral fracture, and the left kneecap fracture had been sustained many years prior, and she had worked in the intervening years. (Tr. 16). The ALJ noted "that the claimant reported that she does not have any problems standing, walking, and climbing stairs." *Id.* With respect to her major depressive disorder, the ALJ noted that the GAF scores assigned by treating physicians reflect only moderate symptoms, and that there were mostly normal findings on mental status examinations, other than times when Ms. Queen was not taking medications as prescribed. (Tr. 16-17). Ultimately, after considering both objective evidence and statements made by Ms. Queen, the ALJ concluded that Ms. Queen's testimony was not credible, and that significant functional limitations were not reflected in the medical evidence of record. *Id.* Finally, the ALJ assigned "substantial weight" to the opinions of the non-examining State agency psychiatrists, and either substantial or moderate weight to the opinions of treating physicians. (Tr. 17-18). Where moderate weight was assigned, the ALJ found in Ms. Queen's favor that she suffered more significant limitations than those found by the physicians, and imposed some additional limitations. (Tr. 18). No opinions in the record suggested a finding of disability.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Queen's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). After considering the entire record, and the evidence outlined above, I find that the ALJ supported his conclusion with substantial evidence.

*Delores Queen v. Commissioner, Social Security Administration*
Civil No. SAG-16-3528
January 25, 2018
Page 4

Next, relying on the VE's testimony, the ALJ determined that a person with Ms. Queen's RFC could perform jobs existing in significant numbers in the national economy. (Tr. 19). Accordingly, I find that the ALJ's determination must be affirmed.

For the reasons set forth herein, Defendant's Motion for Summary Judgment, [ECF No. 21], is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                        Sincerely yours,

                        /s/

                        Stephanie A. Gallagher
                        United States Magistrate Judge